UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ALFREDO DAVIS,

                     *Plaintiff,*

  -against-

A REAL ADVANTAGE INC., and
MICHAEL WESLEY and
ANTHONY WESLEY, each individually,

                     *Defendants.*
------------------------------------------------------------------X

Docket No.:

**COMPLAINT**

**PLAINTIFF HEREBY
DEMANDS A JURY TRIAL**

      Plaintiff, Alfredo Davis, as and for his Complaint, respectfully alleges, all upon information and belief as follows:

### JURISDICTION AND VENUE

1.     This Court has original jurisdiction over the subject matter of this litigation pursuant to 28 U.S.C. §1331, in that certain of the Plaintiff's claims arise under the laws of the United States, namely 29 U.S.C. §§ 201 and 207, the federal Fair Labor Standards Act ("FLSA") and supplemental jurisdiction over the remainder of Plaintiff's claims under New York State Labor Law, §§1 *et seq.*, and the Administrative Code of the City of New York, §8-107 *et seq.* (referred to herein as "The New York City Human Rights Law"), pursuant to 28 U.S.C. §1367.

2.     Venue is proper under 42 U.S.C §2000e-5(f)(3) and 28 U.S.C §1391(b) because Plaintiff resides in the Southern District of New York and the Defendant does business in this District.

## IDENTITY OF THE PARTIES

3. At all relevant times mentioned herein, Plaintiff Alfredo Davis ("Davis") was employed by Defendants A Real Advantage Inc. ("A Real Advantage") and Michael Wesley ("M. Wesley") and Anthony Wesley ("A. Wesley") in the City and State of New York, until his termination on June 25, 2018, because of his race and in retaliation for his complaints of race discrimination and wage and hour violations.

4. At all relevant times mentioned herein, A Real Advantage was and is a corporation duly organized and existing under the laws of the State of New York and does business in the City and State of New York and is a contracting company that specifically specializes in roofing, siding and concrete.

5. At all relevant times herein, Defendants M. Wesley and A. Wesley are principal owners and/or operators of A Real Advantage and directly supervised Davis (collectively, the Defendants are referred to herein as "Defendants" or "A Real Advantage").

6. Defendants M. Wesley and A. Wesley are both Caucasian-American and Davis is African-American.

## BACKGROUND RELEVANT TO ALL CAUSES OF ACTION

7. Davis commenced his employment with A Real Advantage in October 2017 as a laborer and driver.

8. At all relevant times, Davis was qualified for his position and fulfilled his duties in a satisfactory manner.

9. In his role as laborer, Davis reported to A. Wesley, Vice President of Operations, who in turn reported to his father, M. Wesley, President and Owner.

10. Davis generally worked ten (10) hours per day, typically five (5) days per week, Monday through Friday and sometimes worked on weekends, as well.

11. Although Davis' total weekly hours always exceeded 40 hours per week, as he typically worked at least an additional 2 hours per day (10 hours per week), A Real Advantage failed to compensate Davis at an overtime rate for any overtime hours worked.

12. A Real Advantage only paid Davis a flat rate of $125/day, regardless of how many hours he worked that day or in that week, but only if he worked at least 8 or more hours in the day.

13. Davis would be paid less than the $125/day rate if and when he worked less than 8 hours in any given workday.

14. Davis worked for A Real Advantage in a position that is not exempt from the requirement to compensate for overtime hours worked.

15. Therefore, Davis is due additional compensation for each and every hour that he worked in excess of forty (40) hours per week, as he was entitled to be paid at the overtime rate of one and one half the regular rate of pay, or $23.44 per hour, for every hour he worked over 40 hours per week.

16. Throughout his employment with A Real Advantage and up until the day he was terminated, Davis complained about A Real Advantage's failure to pay him for the overtime hours he worked.

17. A. Wesley and/or M. Wesley would punish Davis when he complained about not getting paid for the additional hours he worked by taking him off of the schedule on a subsequent day or days.

18. Davis was terminated on the same day that he made his last complaint about Defendant's unlawful failure to properly compensate him for his work.

19. Defendants also subjected Davis to a hostile work environment because of his race.

20. Specifically, A. Wesley regularly called Davis a "Nigger" to his face during the course of time that Davis worked for A Real Advantage, demonstrating that Davis was treated less well because of his race.

21. By way of example, A. Wesley regularly greeted Davis in the morning by saying **"What's up Nigger, you ready to work?"**

22. Further, A. Wesley said to Davis, **"Nigger, if I check [the truck] and its not [reloaded], you're getting fired."**

23. Additionally, A. Wesley referred to Davis as a "Nigger" when he was offering feedback about the work Davis had performed at a job site.

24. Davis was incredibly demoralized by A. Wesley's racist comments, which were entirely unwelcome to Davis.

25. Davis protested when A. Wesley called him a "Nigger" and complained to M. Wesley about it, but both A. Wesley and M. Wesley ignored his complaints and did nothing to curb the use of racist epithets.

26. On or about June 25, 2018, and very shortly after Davis complained about A Real Advantage's unlawful wage and hour practices, and A. Wesley's racist comments, M. Wesley

terminated Davis, telling Davis, "I am firing you and me and my wife discussed that you will be back in jail in 6 months and I won't remember your name in 5 days" and mockingly adding, "You can talk and plead for your job until your beard touches the floor."

27.     The reason A Real Advantage gave Davis for his termination was a clear pretext to mask its retaliatory intent, as Defendants told Davis that he was being fired for not properly handling a request for new business from one of its current customers, which makes no sense as Davis had been following Defendants' instructions in that exact situation explicitly, and the particular piece of business only became an issue when Davis asked if he could perform the work, which was to be done on the weekend, as overtime.

28.     As a result of A Real Advantage's discriminatory and retaliatory conduct, Davis has been damaged and the quality of his life, his self-esteem, self-respect and well-being have been adversely impacted because he was subjected to the humiliating and demeaning type of conduct described herein, all of which will continue and remain a source of humiliation, distress and financial loss to Davis into the future.

29.     Here, Defendants' conduct towards Davis shows that they acted with wilful or wanton negligence, or recklessness, or a conscious disregard of Davis' rights under the New York City Human Rights Law, or that its unlawful actions against Davis were so reckless as to amount to a disregard of Davis' rights, so that in addition to all the damages inflicted upon Davis and in addition to all the measure of relief to which Davis may properly be entitled herein, Defendants should also

6

be required to pay punitive damages as punishment for its discriminatory conduct in order to deter it and others similarly situated from engaging in such conduct in the future.

### AS FOR A FIRST CAUSE OF ACTION ON BEHALF OF DAVIS AND AGAINST ALL DEFENDANTS FOR VIOLATION OF FLSA OVERTIME LAW, 29 U.S.C. §201, *et seq.*

30. Davis repeats, re-alleges and incorporates in full paragraphs 1 through 29 of this Complaint as though fully set forth at length herein.

31. Throughout his employment, A Real Advantage has knowingly failed to pay Davis for work performed above forty (40) hours per workweek in violation of the federal overtime provisions of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §207.

32. Davis is not an exempt employee under the relevant provisions of the FLSA.

33. Davis is entitled to recover compensatory damages for the unpaid overtime hours that he worked, liquidated damages as provided by the FLSA, attorney's fees and costs, along with such other and further relief as this Court deems just and proper.

### AS FOR A SECOND CAUSE OF ACTION ON BEHALF OF DAVIS AND AGAINST ALL DEFENDANTS FOR VIOLATION OF NYLL OVERTIME LAW, NYLL § 650, *et seq.*

34. Davis repeats, re-alleges and incorporates in full paragraphs 1 through 29 of this Complaint as though fully set forth at length herein.

35. Throughout his employment, A Real Advantage has knowingly failed to pay Davis for work performed above forty (40) hours per workweek in violation of the overtime provisions of the New York State Labor Law ("NYLL"), Article 6 §198.

36. Davis is not an exempt employee under the relevant provisions of the NYLL.

37. Davis is entitled to recover compensatory damages for the unpaid overtime hours that he worked, liquidated damages as provided by NYLL Article 6 §198, attorney's fees and costs, pre- and post-judgment interest, along with such other and further relief as this Court deems just and proper.

### AS AND FOR A THIRD CAUSE OF ACTION ON BEHALF OF DAVIS AND AGAINST ALL DEFENDANTS FOR FAILURE TO PROVIDE WTPA NOTICES IN VIOLATION OF NEW YORK LABOR LAW §195 AND §198

38. Davis repeats, re-alleges and incorporates in full paragraphs 1 through 29 of this Complaint, as though fully set forth at length herein.

39. As Davis was hired by A Real Advantage in or around October 2017, which is well after the effective date of the New York Wage Theft Protection Act ("WTPA"), April 9, 2011, and therefore Defendants' failure to provide Davis with the proper WTPA wage notices constitute violations of New York Labor Law ("NYLL") §195 and §198.

40. As such, Defendants are liable to Davis for statutory damages not to exceed $2,500 for failure to provide the initial wage notice pursuant to NYLL §195(1)(a) and §198(1-b) and statutory damages of $100 for each work week that the violation occurred or continued to occur through December 29, 2014, and $250 for each work week between December 30, 2014 through the date Davis was terminated, not to exceed a total of $5,000, for its violation of NYLL §195(3), as well as reasonable

### AS FOR A FOURTH CAUSE OF ACTION ON BEHALF OF DAVIS AND AGAINST ALL DEFENDANTS FOR RETALIATION IN VIOLATION OF FLSA §15

41. Davis repeats, re-alleges and incorporates in full paragraphs 1 through 29 of this Complaint as though fully set forth at length herein.

42. Davis' complaints to Defendants about the Unpaid Hours Worked was a protected activity pursuant to FLSA §15 of which Defendants were aware.

43. Defendants took Davis off of the schedule and subsequently terminated Davis, all of which is adverse employment action, as a proximate result of those protected activities, as confirmed

9

by the remarkably close temporal proximity between Davis' complaints and being taken off of the schedule, as well as his last complaint and his termination.

44. The aforementioned acts of Defendants constitute unlawful retaliation against Davis in violation of 29 U.S.C. §215 (a)(3), which provides, *inter alia* that:

> It shall be unlawful . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act . . .

45. As a result of Defendants' violations of FLSA §15, Defendants are liable to Davis for all the relief provided for in FLSA §16(b), 29 U.S.C. §216 (b), including all lost wages, both prior and prospective, as well as "liquidated damages," "costs" and "reasonable attorney's fees," as provided for under the law.

46. Here, Defendants' conduct has such a high degree of moral culpability, which manifests a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard, that, in addition to the damages inflicted upon Davis and in addition to all measures of relief to which Davis may properly be entitled herein, Defendants should also be required to pay punitive damages as punishment for their reprehensible conduct in order to deter Defendants and others similarly situated from such conduct in the future, in an amount to be determined at trial.

## AS FOR A FIFTH CAUSE OF ACTION ON BEHALF OF DAVIS AGAINST DEFENDANTS FOR RACE DISCRIMINATION IN VIOLATION OF CHAPTER 1, TITLE 8, §8-107(1)(a) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

47. Davis repeats, re-alleges and incorporates in full paragraphs 1 through 29 of this Complaint as though fully set forth at length herein.

48. At the time Davis was subjected to the discriminatory conduct described herein, he was in a protected class under the New York City Human Rights Law because of his race.

49. Throughout the time of his employment with A Real Advantage and up to the time of his termination, Davis was fully qualified for his position and was in a position to continue working in that capacity.

50. Defendants treated Davis less well because of his race, which culminated in his termination, all of which was adverse employment action that was permitted and condoned by A Real Advantage.

51. The aforementioned acts of Defendants constitute unlawful discrimination against Davis in violation of §8-107(1)(a) of The New York City Human Rights Law, which provides, *inter alia* that:

> It shall be unlawful discriminatory practice . . .[f]or an employer or an employee or agent thereof, because of the actual or perceived ... race ... of any person ... to discharge from employment such person or to discriminate against such person in compensation or in terms,

conditions or privileges of employment.

52. As a result of Defendants' violations of the New York City Human Rights Law §8-107(1)(a), Defendants are liable to Davis pursuant §8-502(a) of said statute for "damages, including punitive damages," and pursuant to §8-502(f) of the statute for "costs and reasonable attorney's fees," as provided for under the law.

53. Davis has been caused to suffer injuries resulting in emotional anguish and suffering, and has been humiliated, demeaned and otherwise degraded because of Defendants' outrageous conduct in violation of Davis' human rights, all of which impacted his well-being and the quality of his life.

54. As a direct and proximate result of Defendants' discriminatory conduct complained of herein, Davis has suffered damages, injuries and losses, both actual and prospective, which include damage to his career and the emotional pain and suffering he has been caused to suffer and continues to suffer, all of which Davis alleges to be in the amount of Two Million Dollars ($2,000,000).

55. Here, Defendants' conduct towards Davis shows that it acted with wilful or wanton negligence, or recklessness, or a conscious disregard of Davis' rights under the New York City Human Rights Law, or that its unlawful actions against Davis was so reckless as to amount to a disregard of Davis' rights, so that in addition to all the damages inflicted upon Davis and in addition to all the measure of relief to which Davis may properly be entitled herein, Defendants should

additionally be required to pay punitive damages as punishment for its discriminatory conduct in the further amount of Three Million ($3,000,000) Dollars, in order to deter Defendants and others similarly situated from engaging in such conduct in the future.

56.     Davis, therefore, seeks judgment against Defendants on this cause of action, including, among other things, for compensatory damages in the sum of Two Million Dollars ($2,000,000), and the additional further sum of Three Million Dollars ($3,000,000). in punitive damages, together with costs, pre-judgment interest and reasonable attorney's fees on this first cause of action, making a total claim of Five Million Dollars ($5,000,000).

### IN THE ALTERNATIVE, AS AND FOR A SIXTH CAUSE OF ACTION AGAINST M. WESLEY AND A. WESLEY, EACH INDIVIDUALLY, FOR AIDING AND ABETTING DISCRIMINATION IN VIOLATION OF CHAPTER I, TITLE 8, §8-107(6) OF THE ADMINISTRATIVE CODE OF THE CITY OF NEW YORK

57.     Davis repeats, re-alleges and incorporates in full paragraphs 1 through 29 of this Complaint, as though fully set forth at length herein.

58.     As more specifically detailed in prior paragraphs of this Complaint, all of which are deemed a part hereof, M. Wesley and A. Wesley aided, abetted and compelled A Real Advantage's discrimination against Davis, so that M. Wesley and A. Wesley should be held personally liable.

59.     The aforementioned acts of M. Wesley and A. Wesley constitute unlawful aiding and abetting against Davis in violation of §8-107(6) of the New York City Human Rights Law, which

states, *inter alia:*

> It shall be an unlawful discriminatory practice for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter, or to attempt to do so.

60. M. Wesley and A. Wesley aided and abetted A Real Advantage to engage in the conduct complained of and, as a direct result, Davis has and will continue to suffer, among other things, a significant loss of income and benefits, emotional injuries, as well as other losses associated with the effects of Defendants' conduct upon Davis' employment, career and life's normal pursuits.

61. As a direct and proximate result of M. Wesley and A. Wesley's violation of the New York City Human Rights Law, M. Wesley and A. Wesley are individually liable to Davis pursuant to §8-502(a) of said statute for damages and pursuant to §8-502(f) of said statute for "costs and reasonable attorney's fees," as has been judicially established.

62. Davis, therefore, seeks compensatory damages in this cause of action including, among other things, for loss of earning capacity and for the emotional pain and suffering Davis has been caused to suffer, which Davis alleges to be in the amount of Two Million Dollars ($2,000,000).

63. Here, M. Wesley and A. Wesley's conduct towards Davis demonstrate that they acted with wilful or wanton negligence, or recklessness, or a conscious disregard of Davis' rights under the New York City Human Rights Law, or that their unlawful actions against Davis were so reckless as to amount to a disregard of Davis' rights, so that in addition to all the damages inflicted upon Davis and in addition to all the measure of relief to which Davis may properly be entitled herein, M.

Wesley and A. Wesley should additionally be required to pay punitive damages as punishment for his discriminatory conduct in the further amount of Three Million ($3,000,000) Dollars, in order to deter M. Wesley, A. Wesley and others similarly situated from engaging in such conduct in the future.

64.     Davis, therefore, seeks compensatory damages in this sixth cause of action, including, among other things, the emotional harm inflicted upon him in the sum of Two Million ($2,000,000) Dollars, and an additional and further sum of Three Million ($3,000,000) Dollars for punitive damages, making a total of Five Million ($5,000,000) Dollars in this sixth cause of action, plus pre-judgment interest, the costs of this action, as well as reasonable attorney's fees.

**WHEREFORE**, Plaintiff Alfredo Davis demands judgment against all Defendants on the First Cause of Action, an award of compensatory damages equal to all unpaid overtime wages pursuant to the FLSA; plus liquidated damages or punitive damages and attorney's fees and costs pursuant to FLSA, 29 U.S.C. §216; and on the Second Cause of Action, an award of liquidated damages or punitive damages pursuant to the NYLL, including but not limited to NYLL §663(1) for willful violations of NYLL, and NYLL §§198 and 663(4); and on the Third Cause of Action, an award in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages for a total of Five Million Dollars ($5,000,000); and on the Fourth Cause of Action, an award in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages for a total of Five Million Dollars ($5,000,000); on the Fifth Cause of Action, an award in the sum of Two Million Dollars ($2,000,000) in compensatory

damages and the futher and additional sum of Three Million Dollars ($3,000,000) in punitive damages for a total of Five Million Dollars ($5,000,000); and, in the alternative, on the Sixth Cause of Action, against Defendants Michael Wesley and Anthony Wesley, each individually, an award in the sum of Two Million Dollars ($2,000,000) in compensatory damages and the further and additional sum of Three Million Dollars ($3,000,000) in punitive damages for a total of Five Million Dollars ($5,000,000); plus pre-judgment interest on the awards herein, the costs of this action and reasonable attorney's fees; and for such relief as this Court deems just and proper.

**SCHWARTZ PERRY & HELLER, LLP**
*Attorneys for Plaintiff*

By: _____
DAVIDA S. PERRY
DANIEL H. KOVEL
3 Park Avenue, 27th fl.
New York, New York 10016
(212) 889-6565